In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00070-CR


______________________________




ERNEST SINCLAIR SPARKS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 338th Judicial District Court


Harris County, Texas


Trial Court No. 875877




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Ross



MEMORANDUM OPINION



 Ernest Sinclair Sparks was convicted in a single proceeding of two offenses of
robbery. The causes have been appealed separately and have been briefed together. 

 Since the briefs and arguments raised therein are identical in both appeals, for the
reasons stated in Sparks v. State, No. 06-02-00069-CR, we resolve the issues in this
appeal in the same manner.

 The judgment, as reformed, is affirmed.

 

 Donald R. Ross

 Justice


Date Submitted: February 19, 2003

Date Decided: March 11, 2003


Do Not Publish



henUsed="true"
 DefSemiHidden="true" DefQFormat="false" DefPriority="99"
 LatentStyleCount="267">
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00186-CR

                                                ______________________________

 

 

                                  KEVIN BENTI DAVIS,
JR., Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 217th
Judicial District Court

                                                           Angelina County, Texas

                                                         Trial Court
No. CR-28107

 

                                                    
                                              

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                     MEMORANDUM 
OPINION

 

            Kevin
Benti Davis, Jr., claims that he was convicted not for being involved in a
crime, but for being in a car with people who committed a crime, and then for
making the mistake of running away from police when they stopped the vehicle.  In a bench trial in Angelina County,[1]
Davis was convicted of aggravated robbery and sentenced to twelve years
imprisonment.  Davis argues that the
evidence is insufficient to support the verdict and that the accomplice-witness
testimony on which the State relied was not sufficiently corroborated to be
considered as evidence supporting his conviction.  We affirm the trial courts judgment because
(1) the evidence sufficiently supports the verdict and (2) the
accomplice-witness testimony was sufficiently corroborated.

(1)        The Evidence
Sufficiently Supports the Verdict

            In
evaluating evidentiary sufficiency, we review all the evidence in the light
most favorable to the jurys verdict to determine whether any rational jury
could have found the essential elements of aggravated robbery beyond a
reasonable doubt.  Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing
Jackson v. Virginia, 443 U.S. 307,
319 (1979)); Hartsfield v. State, 305
S.W.3d 859, 863 (Tex. App.Texarkana 2010, pet. refd).  Our rigorous sufficiency review focuses on
the quality of the evidence presented.  Brooks, 323 S.W.3d at 917 (Cochran, J.,
concurring).  We examine sufficiency
under the direction of the Brooks opinion,
while giving deference to the responsibility of the jury to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. 
Hooper v. State, 214 S.W.3d 9,
13 (Tex. Crim. App. 2007) (citing Jackson,
443 U.S. at 31819); Clayton v. State,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

            Sufficiency
of the evidence is measured by the elements of the offense as defined by a
hypothetically correct jury charge.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997); see Grotti v.
State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); see also Vega v. State, 267 S.W.3d 912, 916 (Tex. Crim. App.
2008).  Under a hypothetically correct
jury charge, the State must prove that appellant committed the offense of
aggravated robbery either himself or that he was criminally responsible for the
offense as committed by the conduct of another. 


            The
Texas Penal Code provides that a person commits the offense of robbery if, in
the course of committing theft as defined in Chapter 31 and with intent to
obtain or maintain control of the property, he or she (1) intentionally,
knowingly, or recklessly causes bodily injury to another; or (2) intentionally
or knowingly threatens or places another in fear of imminent bodily injury or
death.  Tex.
Penal Code Ann. § 29.02 (Vernon 2003). 
The offense becomes aggravated robbery, a first degree felony, when the
actor, inter alia, uses or exhibits a deadly weapon.  See Tex. Penal Code Ann. § 29.03(a)(2) (Vernon 2003).  The hypothetically correct jury charge would
contain these requirements.  Howard v. State, 306 S.W.3d 407, 410
(Tex. App.Texarkana 2010, pet. granted). 
The only aspect of sufficiency that is challenged is whether the State
proved Davis was the actor.

            Two
men, one of them masked and brandishing a semiautomatic pistol, entered a house
and robbed its resident of some money, a broken .25 caliber pistol, a knife,
and a car amplifier.  The victim, Stephen
Spikes, testified that he saw the robbers drive away in a white Hyundai.  In the sequence of events recounted by
Spikes, a female acquaintance came to his house asking for a cigarette,
followed by a black male, who he did not know, wearing a blue jumpsuit.  At trial, Spikes identified that man as
Davis.  About ten minutes after the male
and female left, another male appearedfollowed closely by a male wearing a
blue jumpsuit and a black ski mask and holding a silver, semiautomatic
handgun.  These males threatened Spikes.  Spikes directed them to the money, and they
stole it and the other items.[2]  Spikes testified that it was his belief that
the masked robber was the same person he had just metbased on his belief that
it was the same jumpsuit.  He also stated
that the robber had the same body type, height, and weight as the previous man
in blue.  Thus, Spikes concluded the
masked robber was Davis.

            Spikes
called police, who arrived within five minutes. 
A patrolman en route saw a white car matching the report and began to
follow it.  The white cars driver tried
to outrun the officer.  Within a few
minutes, that officer and another who joined the chase had caught the fleeing
automobile after the driver turned into a dead end street in a wooded
area.  Two of the three occupants jumped
out of the vehicle and ran before the first officer arrived; the third stayed
in the car, where he was arrested by a second officer.  The officer testified that, among other
things, they found at the scene the stolen amplifier, a pistol, a body-armor
vest, a ski mask, a knife, and Spikes wallet, as well as cash and silver
certificates taken during the robbery.  The
officer also testified that two other suspects were captured and arrested
within an hour.  

            Accomplice
witness Brandon Johnson, the driver and the one who had stayed with the car
after being cornered, testified that Adrian Jones (who had come with him from
Houston) and Davis went into Spikes house, as he thought, to buy drugs and the
amplifier.  Johnson testified that he
tried to outrun police only because they told him to and because he thought his
passengers had drugs in his car.  He
testified that Davis asked to borrow his silver pistol in case there was
trouble, explaining that Spikes was a gangster type and that he wanted the gun
for protection.  He also testified that
Davis still had the pistol when he returned to the car carrying the vest and
amplifier.  Johnson stated that he asked
them several times how much marihuana they bought, but received no answer.  Johnson testified that he had talked with
Jones since the robbery and that Jones was supposed to turn himself in to vouch
for Johnsons story, but that Jones did not want to tell the truth.  Finally, Johnson also testified that the ski
mask belonged to Davis, who was wearing it like a cap. 

            Davis
testified that he was in the vehicle and that he ran away.  There is no other point of agreement between
his version of events and those set out above. 
Davis testified that there were five, not three, individuals and that
the other two ran away from Spikes house without getting back into the car.  Davis testified that he did not go up to the
house, that he had no hat, and that he did not even know a gun was in the car.

            In
essence, Davis testified that he was merely in the wrong place, with the wrong people,
at the wrong time.  In support of that,
he pointed out that he had never been in any kind of trouble before, that he
had just turned nineteen, that he had a new son, that he was newly married, and
that he was, at the time of the robbery, due to report for military boot camp
in about three weeks.  He admitted
running away from police, but only because he was understandably afraid that he
would be accused of something that he did not do.  Davis also claimed that Johnson had belonged
to a prison gang, that Jones was not an acquaintance of his, and that Davis had
met Jones the first time that night.

            On
cross-examination, Davis agreed that he had gotten a ride with Johnson, but
that he was not hanging with him. 
Davis, instead, claimed Johnson was giving him a ride home.  Both Jones and Johnson were in their late
twenties.  Davis admitted candidly
thatas he was afraid something was going onhe had made an initial mistake by
not getting out of the car when he saw the others running toward it from
Spikes house.  Davis said he did not get
out of the car because it was his transportation home.  The evidence also shows that Johnson was in
some way related to Davis wife.  

            On
redirect, Davis reiterated that this was the same story he immediately told
police when he was arrested, that the car was not his, and that he had not
mentioned a gun in his statement because at that time he did not know there was
one in the car.

            In
determining the sufficiency of the evidence, we recognize that the evidence in
this case is not conclusive.  That said,
there was uncontroverted testimony that Davis was in the car from which the robbers
emerged, that the stolen items were later in the car with him, and that he
later attempted to escape from pursuing police when they caught up with that
car.  The victim testified that he had
met Davis just minutes before the robbery, that the armed, masked man who came
in within a few minutes to commit the robbery matched the physical description
of Davis, down to the blue jumpsuit.  One
other person from the car was excluded as being the robber, because he entered
the house along with the masked robber. 
The accomplice witness testified categorically that Davis was the masked
robber.

            We
acknowledge that there is some evidence which, if believed, would lead to an
acquittal.  We must also acknowledge that
there is testimony from the accomplice witness that directly incriminates Davis
as the masked robber, evidence about his presence at the scene and his fleeing
from police when the escaping vehicle was stopped, and testimony from the
victim matching the masked robber by the corresponding clothing, size, and body
shape of Davis as observed when he entered Spikes house a very short time
before the robbery.  The evidence
supports a finding of guilt.  Under this
state of the record, and under the mantra of Brooks, the evidence is sufficient to support the verdict.

(2)        The Accomplice-Witness
Testimony Was Sufficiently Corroborated

            Davis
also complains that the accomplice-witness testimony was not sufficiently
corroborated.  The test is whether, after
excluding the accomplices testimony, there is other evidence of an
incriminating character which tends to connect the defendant with the
commission of the offense.  Castillo v.
State, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007).  The other evidence needs only to link the
accused to the commission of the crime and be enough that rational jurors
could conclude that this evidence sufficiently tended to connect [the accused]
to the offense.  Malone v. State, 253 S.W.3d 253, 257 (Tex. Crim.
App. 2008).  As we have set out above,
there is nonaccomplice evidence which, though not conclusive, is of an
incriminating character tending to connect Davis with the commission of this
offense.  Thus, the accomplice-witness
testimony could properly be considered by the jury in determining Davis guilt.

            We
affirm the trial courts judgment.

 

                                                                        Josh
R. Morriss, III

                                                                        Chief
Justice

 

Date Submitted:          March
3, 2011

Date Decided:             March
11, 2011

 

Do Not Publish

 











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Govt Code Ann. § 73.001
(Vernon 2005).  We are unaware of any
conflict between precedent of the Twelfth Court of Appeals and that of this
Court on any relevant issue.  See Tex. R. App. P. 41.3.





[2]In
an effort to explain this robbery, Spikes testified that the brother of the
cigarette girl knew Spikes had recently inherited some money and was purchasing
things.